UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

FAHD YAHYA,  )
 )
      Plaintiff,  )
 )
v.  )   Case No. 1:21-cv-375-CCR
 )
UNITED STATES OF  )
AMERICA,  )
 )
      Defendant.  )

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**
(Doc. 24)

Plaintiff Fahd Yahya brings this action against Defendant the United States of America, alleging negligence pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, for a slip-and-fall accident that occurred at a United States Postal Service ("USPS") facility. On November 1, 2023, Defendant filed a motion for summary judgment, seeking dismissal of Plaintiff's complaint in its entirety. (Doc. 24.) On January 19, 2024, Plaintiff filed an opposition, (Doc. 30), and Defendant replied on February 14, 2024. (Doc. 32). The court heard oral arguments on May 9, 2024, after which it took the present motion under advisement.

Plaintiff is represented by Robert J. Maranto, Jr., Esq., and Thomas P. Kotrys, Esq. Defendant is represented by Assistant United States Attorney Michael S. Cerrone.

**I.  Undisputed Facts.**

In January 2019, Plaintiff was an independent contractor for Prestige Delivery Services ("Prestige"), a company that made deliveries to post offices owned and operated by the USPS. On January 28, 2019, he drove a cargo van he owned to the USPS's Post

Office at 725-733 Hertel Avenue, Buffalo, New York (the "Northside Post Office") to make a delivery for Prestige. Defendant owns and maintains the Northside Post Office.

The weather was cold, but Plaintiff cannot recall if it was snowing or raining. At approximately 9:00 a.m., Plaintiff arrived at the loading dock area and backed his van into the receiving dock. Plaintiff then exited his van and entered the Northside Post Office. Once Plaintiff completed his delivery, he returned to his van and started to drive forward. After noticing the van's rear door was open, Plaintiff stopped and exited the van to shut the door.

At some point, while near the rear of his van, Plaintiff asserts he fell onto his back, struck his head on the ground, and briefly lost consciousness. Thereafter, he returned to his vehicle, proceeded with his next delivery, and completed his work shift. At the time of the alleged fall, Plaintiff did not take photos of the area or call for 911, an ambulance, or medical assistance. He first sought medical treatment the following day.

Although Plaintiff testified that he noticed ice in the general area of the loading dock and there was "snow everywhere," (Doc. 24-2 at 35), he could not recall whether he saw the ice as he entered or exited the Northside Post Office or immediately before his alleged fall. He was unable to estimate the size of the ice patch allegedly located in the loading dock area and testified that he did not know whether the USPS was aware that there was snow and/or ice around the loading dock. He testified that "Mike" and three other individuals witnessed his fall and "Mike" asked if he needed assistance, but Plaintiff declined it.

The USPS contracted with JLL Contracting to handle snow and ice removal, and JLL Contracting subcontracted this work to F & T Snowplowing and Removal, Inc. ("F & T"). F & T was responsible for removing snow and ice from the loading dock area. A January 2019 invoice indicates F & T salted the parking lot of the Northside Post Office on January 27, 2019.

Deevon Karupen has been the manager of the Northside Post Office since December 2019. He testified that, pursuant to USPS protocol, when they are notified of an accident on USPS property, they conduct an on-site investigation, take photographs,

2

report the accident to a supervisor, and prepare an accident report. Mr. Karupen was unable to find any record of an accident or any reports of snow and/or ice or slippery conditions outside the Northside Post Office pertaining to the events and conditions on January 28, 2019.

Defendant identifies a number of accidents Plaintiff experienced that precede the incident at issue here. Plaintiff does not dispute they occurred.

## II.     Disputed Facts.

The parties dispute whether Plaintiff fell at the Northside Post Office on January 28, 2019, and whether Plaintiff has changed his description of the circumstances of his alleged fall. The parties further dispute whether, on the day following the incident, Plaintiff reported the incident to a superior at the Northside Post Office who refused to fill out a report on his behalf.

At the time of the incident, Plaintiff contends there was snow and ice around the loading dock, although he does not remember if he first noticed it "right before his fall[.]" (Doc. 30-5 at ¶ 25) (alteration adopted). Defendant argues that Plaintiff has recanted his previous assertion that he saw snow and ice in the loading dock area.

Plaintiff submits the expert witness report of Meteorologist Aaron Mentkowski as evidence that a hazardous condition formed outside the Northside Post Office in the days preceding January 28, 2019. Mr. Mentkowski reviewed climatological data from January 25, 2019, through January 28, 2019, and found that:

> On January 25, 2019, approximately 17.2" of snow fell on the ground throughout the day at or around the United States Post Office; on January 26, 2019, approximately 0.7" of snow fell on the ground at or around the United States Post Office throughout the day; and on January 27, 2019, approximately 2.6" of snow fell on the ground at or around the United States Post Office throughout the day; on January 28, 2019, a trace amount of snow fell on the ground at or around the United States Post Office throughout the day.

(Doc. 30-6 at 6-7.) Based on these findings, Mr. Mentkowski opined that any buildup of ice and snow at the Northside Post Office would be the result of snowfall from the previous days. In light of these conditions and their proximity to

3

the Northside Post Office, Plaintiff asserts that "the most basic inspection [would have revealed] the snow and/or ice . . . Plaintiff fell on[.]" *Id.* at 7.

Defendant counters that Mr. Mentkowski's opinion is flawed and speculative because he relied on data taken from the Buffalo Niagara International Airport, which is located over eight miles from the Northside Post Office. It contends this data does not reflect the conditions at the Northside Post Office on January 28, 2019.

After the events of January 28, 2019, Plaintiff filed an SF-95 claim with the USPS, and a USPS torts claims coordinator called Mr. Karupen for information regarding the incident. Plaintiff asserts he reported the incident to a manager at the Northside Post Office named "Eric" the day after his alleged fall. Mr. Karupen and his subordinate, Eric Fire, interviewed all Northside Post Office employees and determined they did not have information regarding the incident. Mr. Fire testified that he is not aware of an incident report relating to January 28, 2019, and that he does not recall Plaintiff reporting an incident to him on January 29, 2019.

**III.   Conclusions of Law and Analysis.**

**A.   Standard of Review.**

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' . . . if it 'might affect the outcome of the suit under the governing law.'" *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 39 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 39-40 (quoting *Anderson*, 477 U.S. at 248). If a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . there can be 'no genuine issue as to any material fact[.]'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The court "constru[es] the evidence in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in his [or her] favor." *McElwee v. Cnty. of*

4

*Orange*, 700 F.3d 635, 640 (2d Cir. 2012). "In reviewing the evidence and the inferences that may reasonably be drawn, [the court] may not make credibility determinations or weigh the evidence . . . . Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Proctor v. LeClaire*, 846 F.3d 597, 607-08 (2d Cir. 2017) (internal quotations marks omitted) (citing *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010)).

The moving party always "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (internal quotations marks omitted). When the moving party has carried its burden, its opponent must produce "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249.

"A non-moving party cannot avoid summary judgment simply by asserting a 'metaphysical doubt as to the material facts.'" *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Moreover, not all disputes of fact are material—"[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

**B.     Whether Plaintiff's Expert Witness Report is Admissible.**

Defendant argues that Plaintiff's expert's opinion is "fundamentally flawed and speculative[,]" (Doc. 32 at 6), because Mr. Mentkowski relied on data from the Buffalo Niagara International Airport weather station, located more than eight miles from the Northside Post Office. In so arguing, Defendant relies on three prior decisions from this court.

In *Olejniczak v. E.I. Du Pont De Nemours & Co.*, the plaintiff offered meteorological data from the Buffalo Niagara Airport, which was located in a different city than the defendant's property. This court acknowledged that "common local knowledge dictates that meteorological observations of conditions on a winter day at the

5

Buffalo Airport in Cheektowaga are not necessarily conclusive of the conditions on the same day in Tonawanda." 998 F. Supp. 274, 280-81 (W.D.N.Y. 1998). The court nonetheless found that the proffered data created "a factual issue as to whether defendant [was] entitled to the benefit of the 'storm in progress' rule." *Id.* at 280.

In *Raimond v. United States*, the plaintiff fell at a hospital that was three to five miles away from the Buffalo Niagara Airport. The court noted that "[c]limatological conditions . . . may vary from one locale to another situated three to five miles away" and as a result concluded that "there [was] a genuine issue of material fact whether there was a storm in progress at the Hospital when [the plaintiff] fell." 2004 WL 2108364, at *2 (W.D.N.Y. Sept. 21, 2004).

In *Bryndle v. Boulevard Towers, II, LLC*, the plaintiff offered meteorological data from the Buffalo Niagara Airport to "establish the specific temperatures as evidence of freeze[.]" 132 F. Supp. 3d 486, 498 (W.D.N.Y. 2015). The court found that "reliance on the climatological records in this manner causes [plaintiff's expert's] opinion to be wholly speculative[,]" and therefore it did not "consider [the opinion] as evidence of the specific temperatures" at the time of the plaintiff's fall. *Id.* at 499. *Bryndle* is distinguishable because, in this case, Plaintiff does not seek to establish the temperature at the time of his fall.

Defendant does not challenge Mr. Mentkowski's qualifications to render an expert witness opinion. Rather, it asks the court to deem his report unreliable. The court declines to find Plaintiff's expert witness report inadmissible for purposes of summary judgment. Because a determination of how long any ice or snow were present on the loading dock is for the jury to decide and because only a jury may weigh the evidence and assess Mr. Mentkowski's credibility, summary judgment cannot be granted on this basis. *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (explaining that courts "should not weigh evidence or assess the credibility of witnesses" when reviewing a motion for summary judgment because "[t]hese determinations are within the sole province of the jury[]") (internal quotation marks and citation omitted).

C.     **Whether There Are Genuine Issues of Material Fact Regarding Defendant's Notice of the Loading Dock Conditions on January 28, 2019.**

The FTCA waives the United States's sovereign immunity for claims that allege a personal injury "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his [or her] office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). "Under the FTCA, courts are bound to apply the law of the state . . . where the accident occurred." *Makarova v. United States*, 201 F.3d 110, 114 (2d Cir. 2000). Because it is undisputed that all relevant events occurred in New York, New York substantive law applies. *See Corley v. United States*, 11 F.4th 79, 85 (2d Cir. 2021) ("The Supreme Court has consistently held that the FTCA's reference to the 'law of the place' means law of the State—the source of substantive liability under the FTCA.") (alterations adopted) (internal quotation marks omitted) (quoting *F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994)).

In this case, four facts are disputed: (1) whether Plaintiff's fall occurred; (2) where and how Plaintiff fell; (3) whether Plaintiff reported the incident the following day; and (4) whether Defendant had constructive notice of the allegedly icy conditions of the loading dock on January 28, 2019. Defendant argues that summary judgment is nonetheless warranted because, regardless of whether, where, and how Plaintiff fell, there is no genuine issue of material fact that Defendant lacked actual or constructive notice of the conditions of the loading dock on the day of the incident. On that basis, it seeks summary judgment on Plaintiff's negligence claim.

Under New York law, a plaintiff claiming negligence must establish "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) [that the] injury proximately result[ed] therefrom[.]" *Pasternack v. Lab'y Corp. of Am. Holdings*, 59 N.E.3d 485, 490 (N.Y. 2016) (citation omitted). "A landowner owes a duty to another on his land to keep it in a reasonably safe condition, considering all of the circumstances

7

including the purpose of the person's presence and the likelihood of injury." *Macey v. Truman*, 519 N.E.2d 304, 305 (N.Y. 1987), *amended*, 524 N.E.2d 147 (N.Y. 1988). A duty arises when the landowner "create[s] the alleged defect or ha[s] actual or constructive notice thereof[.]" *Bergin v. Golshani*, 14 N.Y.S.3d 98, 99 (App. Div. 2015) (citations omitted).

"The federal burden of proof on a motion for summary judgment differs from the corresponding standard under New York law in a slip-and-fall action." *Baker v. Wal-Mart Stores E., L.P.*, 2023 WL 4898882, at *3 (S.D.N.Y. Aug. 1, 2023). New York law places the initial burden on the defendant to make "a *prima facie* showing that [the defendant] neither created the alleged hazardous condition, nor had actual or constructive notice of its existence for a length of time sufficient to discover and remedy it." *Vasquez v. United States*, 2016 WL 315879, at *4 (S.D.N.Y. Jan. 15, 2016) (emphasis added) (citations and internal quotation marks omitted). "Although New York law governs the substance of [the plaintiff's] claim, procedural issues are to be decided according to federal standards." *Borts v. United States*, 2016 WL 2622292, at *2 (E.D.N.Y. Mar. 15, 2016) (citation omitted). As a result, to prevail on a motion for summary judgment, a defendant "need not show that [he or she] lacked notice, but, instead, may properly discharge [his or her] burden by pointing out 'an absence of evidence' that it had notice." *Id.* (citing *Celotex*, 477 U.S. at 325). Plaintiff concedes he has no evidence of actual notice.

In seeking summary judgment, Defendant argues that Plaintiff fails to proffer admissible evidence that Defendant had constructive notice of the allegedly slippery conditions before Plaintiff's fall. Plaintiff asserts the fact of his accident at the Northside Post Office coupled with the evidence that snow and ice accumulated in the days prior to his accident is sufficient to support an inference that Defendant had constructive notice of the dangerous condition.

"To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Gordon v. Am. Museum of Nat. Hist.*, 492 N.E.2d

774, 775 (N.Y. 1986) (citations omitted). "[A] general awareness" that a "dangerous condition may be present" is insufficient. *Id.* (citations omitted); *see also Batiancela v. Staten Island Mall*, 592 N.Y.S.2d 66, 67 (App. Div. 1993) (concluding "mere existence" of dangerous condition without evidence of "length of time" it was present cannot "constitute evidence of constructive notice").

"Under New York law, a court will impute constructive notice to a party if that party failed to conduct reasonable inspections of its property and 'a reasonable inspection would have revealed the defective condition.'" *Taylor v. Manheim Remarketing, Inc.*, 752 F. App'x 94, 95 (2d Cir. 2019) (quoting *Dufrain v. Hutchings*, 112 A.D.3d 1212, 1213 (N.Y. App. Div. 2013)).

> In considering whether a defendant has actual or constructive notice of a dangerous condition, the trier of fact should examine "the type of premises involved, and [consider] that when an owner or operator ' . . . invites the participation of the public in his [or her] operation, necessarily he [or she] must recognize and be ready to discharge a heightened duty arising out of dangers reasonably to be expected from that participation.'"

*Stephanides v. BJ's Wholesale Club, Inc.*, 2013 WL 1694901, at *5 (E.D.N.Y. Apr. 18, 2013) (quoting *Kelsey v. Port Auth. of N.Y. & N.J.*, 52 A.D.2d 801, 801 (N.Y. App. Div. 1976)).

Plaintiff, through his testimony, proffers evidence that the ice was visible because there was snow "everywhere" at the time of his fall and because he saw snow or ice before he slipped and fell near the loading dock entrance to the Northside Post Office. *See Conklin v. Ulm*, 41 A.D.3d 1290, 1291-92 (N.Y. App. Div. 2007) (finding plaintiff "raised an issue of fact whether [his] fall was caused by ice existing for a sufficiently long period of time to hold defendant liable for constructive notice of its presence" where "plaintiff submitted his own affidavit, . . . in which he stated that, while he was on the ground, he noticed that the surface of the area where he fell was icy[]"). To establish the length of time the ice was present, Plaintiff relies on Mr. Mentkowski's expert report, wherein he finds snow fell in the days leading up to Plaintiff's alleged fall and opines "that any build-up of snow and ice at the [Northside] Post Office on January 28, 2019

9

would be the result of the snow-fall from days prior to the incident." (Doc. 30-6 at 7.) Because of the proximity of the location of his fall to the Northside Post Office, Plaintiff claims a reasonable inspection would have revealed the icy conditions.

Defendant operates a public building in an area that is prone to snowy and icy conditions and to which the general public is invited to obtain an essential service. Defendant thus had a "heightened duty" to keep its property free of snow and ice that could cause injury. *Stephanides*, 2013 WL 1694901, at *5. On or about January 28, 2019, Defendant was required to perform an inspection to ensure the Post Office was free of hazardous conditions. Defendant proffers no evidence that an inspection took place, nor does Defendant claim it routinely inspected its property for this purpose. *See Gonzalez v. Am. Oil Co.*, 42 A.D.3d 253, 253, 255 (N.Y. App. Div. 2007) (finding that where the evidence suggests "that [a] large patch of ice was near the front door to the store for a considerable period of time prior to the accident," it can be inferred "that defendants, had they acted reasonably with regard to their obligation to keep the area free from snow and ice, would have discovered it[]").

Citing *Citarella v. United States*, 86 F. Supp. 3d 151 (E.D.N.Y. 2015), Defendant argues that Plaintiff cannot show the snow and/or ice was visible and apparent because he "did not notice ice in the loading dock area on his first two trips through that area and was not sure if he saw the ice on his third trip prior to his fall[.]" (Doc. 32 at 5.) In *Citarella*, a plaintiff who slipped and fell at a Post Office loading dock alleged that he did not observe ice prior to his fall. The court found that the plaintiff "ha[d] failed to create a genuine issue of material fact that the [d]efendant . . . had . . . constructive notice of the icy condition alleged to have caused the plaintiff's fall" because "[p]laintiff [sought] to hold the [d]efendant liable on a theory that it was generally aware of icy conditions[.]" *Citarella*, 86 F. Supp. 3d at 154-55 (internal quotation marks omitted). Although the facts

in *Citarella* and the instant case are similar,[1] they remain distinguishable. Plaintiff contends he observed snow and ice near the loading dock before his fall.[2] He offers an expert report on meteorological conditions and claims that he reported the incident the following day, and he identified the person to whom he made the report.

Although Defendant cites evidence that F & T salted the parking lot of the Northside Post Office on January 27, 2019, the day before Plaintiff's alleged fall, the timing of the salting has not been established. No evidence has been proffered by either party regarding the interval of time and weather conditions between the salting and Plaintiff's alleged fall, or the location and extent of the salting. *See Wood v. Buffalo & Fort Erie Pub. Bridge Auth.*, 178 A.D.3d 1383, 1384 (N.Y. App. Div. 2019) (rejecting "defendant's contention that it demonstrated the absence of constructive notice by offering evidence, in the form of its inspection log, of regularly recurring maintenance or inspection of the premises" because "the log does not reflect when the relevant area was actually inspected and cannot establish that the ice formed so close in time to the accident that defendant could not reasonably have been expected to notice and remedy the condition[]") (citation, alteration, and internal quotation marks omitted). As a result, to the extent Defendant relies on evidence that the Northside Post Office was salted on

---

[1] In *Citarella*, the Post Office Postmaster, Robert Degaro, "never received any complaints, or notice of any kind, regarding ice, or any dangerous condition, on the [Post Office] loading dock. . . . Degaro never personally observed ice on the [Post Office] loading dock" on the day of the incident, "nor did anyone, including Degaro's subordinates and the [p]laintiff, complain to him or notify him of ice on the [Post Office] loading dock" on that date. 86 F. Supp. 3d at 152. The plaintiff in *Citarella* "did not inform any postal worker of his fall" and did not notify the Postal Service until he filed an administrative action "16 months after the occurrence[.]" *Id.* at 153.

[2] Defendant argues that Plaintiff recanted this claim and points out a "lack of memory does not create a genuine issue of fact." *Taylor v. City of N.Y.*, 2022 WL 744037, at *19 (S.D.N.Y. Mar. 11, 2022). Plaintiff admitted he did not remember whether he saw snow and/or ice on the loading dock while walking to and from the Northside Post Office, but he testified to seeing snow on the loading dock while walking to the rear of his truck. Plaintiff's credibility is an issue for the jury. *Moye v. Corcoran*, 668 F. Supp. 2d 523, 539 (W.D.N.Y. 2009) ("Questions of witness credibility belong to the fact-finder[.]").

11

January 27, 2019,[3] a reasonable jury could infer from that evidence that the parking lot required salting to keep it free from accumulated ice and snow. It would not, however, be compelled to find that the salting removed any hazard.

Plaintiff's testimony coupled with the proffered expert report as well as the lack of evidence of a pre-fall inspection of the premises is sufficient to create a genuine issue of material fact regarding Defendant's constructive notice. *See Uhlinger v. Gloversville Enlarged Sch. Dist.*, 19 A.D.3d 780, 781 (N.Y. App. Div. 2005) (finding "questions of fact regarding whether defendant had constructive notice of the icy conditions and ample time to take corrective action" where plaintiff submitted two witness affidavits and expert "meteorological data [that] pointed out that approximately five inches of snow fell over the day or two before plaintiff's fall and no precipitation fell for approximately eight hours prior to [plaintiff's] fall[]"). Because genuine questions of material fact remain, Defendant has not established it is entitled to judgment as a matter of law in its favor. Defendant's motion for summary judgment is therefore DENIED. *See Tarpon Bay Partners LLC v. Zerez Holdings Corp.*, 79 F.4th 206, 232 (2d Cir. 2023) (affirming district court's denial of summary judgment where "[t]he record . . . present[ed] several genuine issues of material fact").

---

[3] Plaintiff argues this evidence is inadmissible hearsay but does not move to strike it. This evidence is likely to be admissible as a business record under Fed. R. Evid. 803(6) if the Northside Post Office integrated the document into its records and relied upon it in circumstances indicating its trustworthiness. *See United States v. Lieberman*, 637 F.2d 95, 100 (2d Cir. 1980) ("In light of the complexities of modern business, direct proof of actual knowledge of the person making the record or providing the information is not required, and the requisite knowledge may be inferred from the fact that it was someone's business to obtain such information."); *Black Sea & Baltic Gen. Ins. Co., Ltd. v. S.S. Hellenic Destiny*, 575 F. Supp. 685, 690 (S.D.N.Y. 1983) (finding that third-party invoices were admissible under "a narrow expansion of the business records rule [that] permits receipt into evidence of records received and maintained by an entity in the ordinary course of business[]"); *see also Gordon v. New England Cent. R.R., Inc.*, 2019 WL 5084160, at *1 (D. Vt. Oct. 10, 2019) ("While the content of the evidence submitted to support or dispute a fact [at summary judgment] must be admissible, the material may be presented in a form that would not, in itself, be admissible at trial.") (citation and internal quotation marks omitted).

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is DENIED. (Doc. 24.)

SO ORDERED.

On this 25th day of November, 2024.

Christina Reiss, District Judge
United States District Court